IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIAM BIRD,<br><br>    Plaintiff,<br><br>v.<br><br>DANIEL BISS, in his official and individual capacities,<br>LUKE STOWE, in his official and individual capacities,<br>ALEXANDRA RUGGIE, in her official and individual capacities, and<br>CITY OF EVANSTON,<br><br>    Defendants. | Case No. 1:24-cv-00310<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, Liam Bird ("Bird"), for his Complaint against Defendants Daniel Biss ("Biss"), Luke Stowe ("Stowe"), Alexandra Ruggie ("Ruggie"), and the City of Evanston states as follows:

### SUMMARY OF CLAIM

1. Plaintiff served as the Manager of Organizational Performance and Equity for the City of Evanston, Illinois, a position which has nothing to do with foreign affairs in general, and the conflict in the Middle East in particular. Nonetheless, in the aftermath of the October 7, 2023 Hamas attacks in Israel, Plaintiff's statements of personal opinion concerning Palestinian rights came under intense scrutiny. On December 29, 2023, Defendants fired Plaintiff because of his expressions of sympathy for the plight of Palestinian people in Gaza. He now files suit for First Amendment retaliation.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) and (4) in that this is a suit to redress the deprivation of the Plaintiff's rights, privileges and immunities under color of state law as secured by the First and Fourteenth Amendments and 42 U.S.C. § 1983.

4. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) and (c) in that Defendants all reside in this district and all events giving rise to Plaintiff's claims and causes of action occurred within this district.

## PARTIES

5. Plaintiff Bird is a resident of Chicago, Illinois.

6. Defendant Biss is a resident of Evanston, Illinois. He holds the position of Mayor of Evanston; he is sued in his individual and official capacities.

7. Defendant Stowe is a resident of Libertyville, Illinois; he holds the position of Evanston City Manager, a position to which Defendant Biss and the Evanston City Council appointed him. He is sued in his individual and his official capacities.

8. Defendant Ruggie is a resident of Highland Park, Illinois; she holds the position of interim Corporation Counsel for the City of Evanston. She is sued in her individual and her official capacities.

9. City of Evanston is an Illinois Municipal Corporation which employs the individual Defendants.

## STATEMENT OF FACTS

10. In April, 2023, Defendants hired Bird for the position of Evanston's Manager of Organizational Performance and Equity, with a start date in June, 2023. Bird was particularly well-suited for the position: his qualifications included a Masters Degree in Public Policy and Administration from Northwestern University; he also had served as the Director of Racial Equality Initiatives for Chicago Public Schools.

11. Bird's principal task was to serve as Evanston's advisor "on matters concerning racial equity in the workplace." He was also tasked with being Stowe's liaison with Evanston's Equity and Empowerment Commission, the members of which were appointed by Defendant Biss and the Evanston City Council. That Commission met on a monthly basis, and Bird had no input as to its brief or agenda.

12. Though Bird was told during the interview process that one of his duties would be creating policy, once he was hired he was never allowed to do so. Instead, Bird was required to obtain the approval of Corporation Counsel Ruggie before emailing or meeting with anyone other than city managers. During his six-month tenure, Bird did not make or create a single policy, and the few policies which he proposed were tabled or rejected outright.

13. Bird's job responsibilities had nothing to do with foreign affairs. At no time prior to October 7, 2023 had he volunteered, or been pressed to state, his personal opinions concerning the ongoing conflict in the Middle East.

### Bird's Prior Palestinian Advocacy

14. Bird happens to be personally sympathetic to the plight of the Palestinian people. He studied their history in college; he even composed a song about the Palestinian cause, a song which was released twice. The first was with the band Organic Flow on the track "So, In America." https://organicflow.bandcamp.com/album/so-in-america. The second was as ESHR, Bird's stage name for his solo electronic/scratch DJ act; it was released on July 26th, 2014 with the title "Protest verse is in order!!! #freepalestine". https://m.facebook.com/MCESHR/videos/protest-verse-is-in-order-freepalestine/426319144175338/. The song contains the following lyrics:

> *These are war crimes against humankind/*
> *Obama supplied the arms, now people are being fired on/*
> *It required our consent, but decision-making power super packed for 1 percent/*
> *Hard to circumvent the military industrial complex/*
> *So can't free Palestinians from bomb specs/*

*Pay respect to the child in Gaza killed on the hour/*
*Since July 8th, 627 Palestinians devoured/*
*Into dismembered enclaves like their territory/*
*Conflict as execution of apartheid circulatory/*
*Thich Nhat Hanh said "transcend the tendency to take sides"/*
*But how do we put a stop to these daily war crimes?*

15. Bird also posted many statements about Palestinians issues on social media platforms, including several in support of Steven Salaita, a Palestinian-American professor whose professorship offer was revoked by the University of Illinois over his personal tweets criticizing the Israeli government's assault on Gaza in 2014. A leading critic of Salaita at the time was Evanston resident Steven Lubet, a law professor at Northwestern University. Bird's Facebook posts were public at the time.

### The October 10, 2023 Directors Meeting And Its Aftermath

16. Bird regularly attended Evanston's weekly meeting for directors and select managers (internally labeled "Directors meetings"), meetings which were typically run by Defendants Biss and Stowe. Prior to the October 10, 2023 meeting, there had been no discussion of the conflict in the Middle East – or any other foreign conflict – in any Directors meeting which Bird attended.

17. Approximately 20 people attended the October 10, 2023 Directors meeting. During the meeting, Biss and Stowe made several comments to the effect of "We stand with Israel." Stowe also announced a plan to place Israeli flags around the Evanston City Hall complex. Bird did not respond to the comments about Israel during the meeting. However, he later sent Stowe an email in which he stated:

Hi Luke,

Here are a few thoughts I wanted to share about the Hamas-Israel conflict:

I think it's important we both support the people of Israel as well as Palestinian people who are both caught in a war beyond their control. As you know, Hamas

doesn't represent Palestine. Chicago has one of the largest concentrations of Palestinian/Palestinian American people in the United States with the 85,000. I'm sure Evanston also has a fairly high number, so we should make sure to express solidarity and affirm the great challenges both are facing at this time. Let me know if I can help craft a statement for our community.

In community,

Liam

On information and belief, Stowe sent Bird's email to Biss and Ruggie.

18. The next day, Bird met with Alison Leipsiger, Evanston's Policy Coordinator, for the purpose of discussing streamlining a feedback process for Evanston's 11 different departments. Since the official business of the meeting could not begin until Ruggie arrived (Ruggie had to review and approve even minor changes to existing protocols), Bird and Leipsiger passed part of their wait by discussing current events. After Bird expressed concern for the fate of the non-Hamas Palestinians living in Gaza, Leipsiger responded that Bird's views reflected "ignorance" influenced by "Hamas propaganda." Leipsiger directly reported to Stowe, and on information and belief, she shared Bird's comments with Stowe.

### Bird's New Social Media Posts

19. Bird kept his sentiments about Palestinians in Gaza out of any official dialogue relating to his job duties. However, he was not discreet about his social medial posts. On October 11, 2023, Bird posted an Instagram and Facebook a backdrop of photos of Palestinians with the statement "Approximately **1 Palestinian killed per day** by Israeli soldiers and settlers in 2023, prior to Hamas's attack on Israel on October 7." (Emphasis in original). Among Bird's Instagram followers is an Evanston government account – "Participatory Budgeting Evanston" – accessible by several employees; his Facebook "friends" also includes several Evanston employees.

20. On October 12, 2023, Bird reposted the following message from Dr. Cornel West on his Instagram and Facebook accounts:

> This is carnage and nothing short of a war crime! Congress must pass a resolution calling on Israel to cease and desist targeting civilians and children immediately! There is no moral high ground associated with targeting hospitals and refugees fleeing war zones!

21. On October 27, 2023, Bird retweeted the following post by Bernice King:

> It is midnight in the Middle East and in the world, as Palestinians endure death and devastation, now including a near-total cellular and internet blackout resulting from Israel's strikes.
>
> And as people weep for loved ones in Israel who were taken hostage and/or killed by Hamas.
>
> As I mourn the unconscionable disregard for humanity, and appeal for the release of all hostages, I, once again, passionately urge a cease fire and immediate development to Gaza of additional, crucial life-saving supplies at the scale needed.
>
> We can't wait.
>
> Bernice A. King

Bird posted this letter on "X", the platform formally known as Twitter. Stowe was a follower of Bird on X; he sent the post to Biss and Ruggie, or, at a minimum, told them about it. Such post is also easily found on the Internet. Bird was removed from the Directors list and City Council meetings via Google calendar that same day (October 27).

22. Given his social media posts, his email to Stowe and his comments to Leipsiger, Bird was a "dead man walking", though he didn't know it at the time. Defendants realized that the optics of firing Evanston's Black face of DEI over "progressive" social media posts would be problematic, but they had a plan.

**The Ceasefire Resolution**

23. Bird attended the Equity and Empowerment Commission meeting on November 16, 2023, where he learned that Commissioners wanted to propose a resolution calling for an Israeli ceasefire in Gaza, which resolution would be introduced at a Commission meeting on November 30, 2023.

24. Bird had nothing to do with the proposed resolution, and he immediately forwarded the draft resolution to Stowe and Ruggie the very next morning (November 17).

25. Ruggie promptly issued a legal opinion concluding that such a resolution fell outside of the mission and jurisdiction of the Commission, which was to address issues directly impacting Evanston residents. Nonetheless, Defendants encouraged that the November 30 meeting proceed anyway. Moreover, Biss took steps to (1) spike attendance at the November 30, 2023 meeting, and (2) associate Bird with the resolution.

26. On November 20, Stowe and Leipsiger convened in Bird's office, and told him that the planned November 30th meeting should proceed. They also viewed the draft resolution on Bird's computer monitor, line by line, and dictated certain edits to render the resolution "more diplomatic." Bird made Leipsiger's and Stowe's proposed edits in a "Google Drive" document which he forwarded to the Commission as suggested edits, as he had no authority to require the Commission to do anything.

27. On November 21, Evanston City Clerk Saul Rodriguez informed Bird that his name and email address were being added to the Equity and Empowerment Commission website. At the time, Bird thought that the website change was odd because of its timing, and the fact that other Evanston commissions did not identify the email addresses of staff liaisons.

28. Thereafter, Biss publicized the proposed resolution and his opposition to the resolution; he also identified Bird as the sole Evanston employee associated with the Commission. On November 29, 2023, *Evanston Now* ran an article headlined "Mayor Criticizes Ceasefire Resolution," an article which also identified Bird as "staff liaison to the commission."

29. Reaction to the article was fast and furious. On November 29 and 30, Bird received nearly 450 emails denouncing the resolution, one of which was from the aforementioned Steven Lubet.

30. Nonetheless, the meeting proceeded as planned on November 30, in accordance with Defendants' wishes. Two hours before the meeting, Stowe and Ruggie met with Bird to discuss logistics and security for the meeting. Biss's efforts to publicize the meeting were successful: hundreds of angry residents attended in person and many others attended via Zoom.

31. Though Bird said nothing of substance during the meeting, much of the angry correspondence which ensued was directed at him, the sole paid Evanston employee whom Biss had associated with the resolution.

32. Numerous unhappy Evanston residents contacted Biss about Bird and his beliefs, some of whom had undoubtedly found his social media activity (of which Defendants were already aware). One resident, Steven Lubet, was particularly curious about Bird: On December 1, 2023, Lubet filed three FOIA requests seeking Bird's communications.

33. On December 5, 2023, Stowe placed Bird on leave, and on December 29, Stowe and Ruggie fired him via Zoom. During the Zoom meeting, Bird asked why he was being fired; Stowe responded, "You are an at will employee." Bird then asked, "Is this about the meeting?" Stowe responded, "It has nothing to do with the meeting." Ruggie then added that the City of Evanston would allow Bird to resign and receive six weeks of paid severance.

34. Minutes after the call, Bird received a "Separation and Release Agreement" in which Evanston would agree to allow Bird to resign and receive six weeks' severance pay in exchange for a release of all claims, including "retaliatory discharge." Bird declined to sign the document.

35. All Defendants participated in the decision to fire Plaintiff.

36. Defendants' conduct subjected Plaintiff to trauma and humiliation. At the November 30 meeting, he was called "ignorant" and "unintelligent." The hundreds of emails called

him "antisemitic," and one irate resident even wrote to one of Bird's family members. Defendants then fired Plaintiff in the middle of his celebration of Kwanzaa with his family.

## COUNT I
## First Amendment Retaliation

37. Plaintiff repeats and re-alleges Paragraphs 1 through 36 as though fully set out herein.

38. Defendants choreographed the vitriolic attacks on Plaintiff over the resolution. At bottom, Defendants' firing of Plaintiff was in retaliation for his protected speech alleged above, all of which involved matters of public concern.

39. The actions of Defendants and each of them, in retaliating against Plaintiff and in facilitating, aiding, abetting and condoning said retaliation, caused Plaintiff compensable injuries and harmed him in the exercise of his First Amendment rights as guaranteed by the Fourteenth Amendment and § 1983.

40. The actions of Defendants and each of them, in retaliating against Plaintiff and in facilitating and condoning said retaliation, denied Plaintiff's exercise of his First Amendment rights as guaranteed by the Fourteenth Amendment and § 1983.

41. The actions of Defendants have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, damage to his reputations, and will continue to cause him future pecuniary losses, and other consequential damages in violation of his First Amendment rights guaranteed through the Fourteenth Amendment and § 1983.

42. The actions of Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by the First Amendment through the Fourteenth Amendment and § 1983.

**WHEREFORE**, Plaintiff seeks the following relief as to Count I of the Complaint:

A.    The entry of judgment against Defendants Biss, Stowe and Ruggie;

B.    All wages and benefits Plaintiff would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

C.    Compensatory damages for the mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience and damage to his reputations, in an amount to be determined at trial;

D.    Grant Plaintiff an award of punitive damages as allowed by law as against the individual Defendants;

E.    An award of reasonable attorneys' fees, costs, and litigation expenses, and

F.    Grant Plaintiff such other relief as the Court may deem just, equitable and appropriate.

## COUNT II
### State Law Claim – Indemnification

43.    Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

44.    Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based on upon the employees' misconduct committed within the scope of their employment activities.

45.    The individual Defendants are employees of the City of Evanston, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff prays this Court enter judgment in his favor and against Defendant Evanston for indemnification for all monetary awards excepting punitive damages.

**JURY DEMAND**

Plaintiff demands trial by jury.

Dated: January 12, 2024                          Respectfully submitted,

                                                      */s/ Paul K. Vickrey*
                                                      Paul K. Vickrey
                                                      Patrick F. Solon
                                                      Dylan M. Brown
                                                     Vitale, Vickrey, Niro, Solon & Gasey
                                                     311 S. Wacker Drive, Suite 2470
                                                     Chicago, IL 60606
                                                     Phone: (312) 236-0733
                                                     vickrey@vvnlaw.com
                                                     solon@vvnlaw.com
                                                     dbrown@vvnlaw.com
                                                     ***Attorneys for Plaintiff***